**LA VERNE CO-OP. CITRUS ASS'N et al. v. UNITED STATES (and four other cases).**

**No. 10266.**

Circuit Court of Appeals, Ninth Circuit.

June 20, 1944.

Guy Richards Crump, of Los Angeles, Cal., for appellants.

Tom C. Clark, Asst. Atty. Gen., John S. L. Yost and W. Carroll Hunter, Sp. Assts. to Atty. Gen., David P. Gordon, Atty., U. S. Dept. of Agriculture, of Washington, D. C., and Charles H. Carr, U. S. Atty., and John McPherson Gault and Wm. W. Worthington, Asst. U. S. Attys., both of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The United States at the request of the Secretary of Agriculture brought five actions against various lemon associations to enjoin the handling of lemons in violation of Order No. 53 issued by the Secretary of Agriculture pursuant to the provisions of the Agricultural Adjustment Act of 1933, 48 Stat. 31, as amended and as re-enacted and amended by the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S.C.A. § 601 et seq. (hereinafter referred to as the Act). The district court ordered that the five cases be tried together and that the evidence introduced be applied to each case where relevant. On the appeal the five cases were so heard upon a single record of the trial in the district court. Judgments were given permanently enjoining the lemon associations from violating the provisions of Order No. 53 until further order of the district court, or until the entry of judgment in another specified action determining Order No. 53 invalid or inapplicable to the lemon associations. The lemon associations appeal.

The Act directs the Secretary of Agriculture to issue orders regulating the handling of specified agricultural commodities, including lemons, which handling is in the current of interstate or foreign commerce or which directly burdens, obstructs, or affects such commerce, 7 U.S.C.A. § 608c(1). A hearing and due notice thereof are prerequisites to the issuance of an order, § 608c(3). Orders referring to fruits may limit the total quantity of the commodity which may be marketed by all handlers during a specified period and may provide methods for allotting the amount of any such commodity which each handler may market during a specified period, the quantity to be based upon the amounts the handler has available for current shipment or upon the amounts shipped by the handler in a prior representative period, § 608c(6).

Under the Act a handler subject to any order may petition the Secretary of Agriculture for modification of the order or for exemption therefrom on the ground that the order or any obligation thereunder is not in accordance with the law. The Secretary's ruling, after a hearing on the matter, is final "if in accordance with law," § 608c(15) (A).[1] However, within twenty

[1] 7 U.S.C.A. § 608c (15):

"(A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

"(B) The District Courts of the United States (including the district court of the United States for the District of Columbia) in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. Service of process in such proceedings may be had upon the Secretary by delivering to him a copy of the bill of complaint. If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a (6) of this title. Any proceedings brought pursuant to section 608a (6) of this title (except where brought by way of counterclaim in proceedings instituted pursuant to this subsection (15)) shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)."

days the petitioner may file a bill in equity in a federal district court for a review of the Secretary's ruling, § 608c(15) (B). The district courts are also given jurisdiction "specifically to enforce, and to prevent and restrain" violations of orders made pursuant to the Act, § 608a(6).[2] Each violation of an order is subject to a fine unless a petition under § 608c(15) was filed in good faith when no fine is incurred for violations between the date the petition is filed and the date the violator is given notice of the Secretary's ruling thereon, § 608c(14).

"The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 8a(6) of this title [7 U.S.C.A. § 608a(6)]. Any proceedings brought pursuant to section 8a(6) of this title * * * shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)," § 608c(15) (B).

Order No. 53, an "Order Regulating the Handling of Lemons Grown in the States of California and Arizona," was issued by the Secretary of Agriculture on April 5, 1941, and became effective on April 10, 1941. A public hearing, notice of which was given to appellants and to other interested persons, had been held, and the order was based upon evidence introduced at the hearing. The order regulates the handling of all lemons grown in California and Arizona and in the current of commerce between California, or Arizona, and any point in the United States or Canada outside the state. It establishes a Lemon Administrative Committee, which is charged with administering the order. It empowers the Secretary of Agriculture, upon the recommendation of the Committee, to fix the total quantity of lemons which may be handled during a specified week and to determine bi-weekly a prorate base for each handler who has applied to the Committee therefor. The prorate base is defined as the ratio between the quantity of each handler's lemons which are available for current shipment and the quantity of all handlers' lemons available for current shipment. The formula for determining each handler's weekly allotment is given as the product of the handler's prorate base and the total quantity of lemons fixed by the Secretary for handling during the week. The order indicates the basis upon which the quantity of lemons of a handler available for current shipment should be computed and includes provisions for variations in allotments under certain conditions.

The complaints herein charged the defendants with violations of Order No. 53 in that for a certain period they shipped in interstate and foreign commerce lemons in excess of their allotments. In accordance with the provisions of § 608a(6) of Title 7 U.S.C.A., the complaints seek to enjoin further handling of lemons contrary to the terms of the order. Temporary restraining orders against such violations were issued. Appellants admitted that they had shipped an excessive quantity of lemons during the period specified in disregard of the order. Denials in the answers raise the issues of whether non-compliance by appellants with the order was or would be injurious to foreign or interstate commerce in lemons or to growers, handlers or consumers of lemons, did or would threaten the stability of such commerce, and did or would tend to thwart the national policy of improving marketing conditions with respect to the handling of lemons and other specified commodities in interstate and foreign commerce.

Each of appellants alleges in its answer as an affirmative defense that Order No. 53 and the prorate orders issued pursuant thereto, as administered by the Lemon Administrative Committee and by the Secretary of Agriculture, are unreasonable, arbitrary, unjust and discriminatory as against appellant and that they deprive appellant of its property without due process of law, thereby violating the fifth amendment to the Constitution of the United States. In addition each claims that it is suffering irreparable loss because it handles silver and tree-ripe (yellow) lemons which have a much shorter storage life than green lemons and which therefore cannot be marketed in large quantities in fresh fruit form under

---

[2] 7 U.S.C.A. § 608a (6):
"The several district courts of the United States are hereby vested with jurisdiction specifically to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement, heretofore or hereafter made or issued pursuant to this chapter, in any proceeding now pending or hereafter brought in said courts."

the order, and because unreasonably low and discriminatory allotments allowed defendants have compelled it to dispose of a great amount of lemons in other than fresh fruit channels.

During the time involved herein appellants were pursuing their remedy under § 608c(15) of the Act. A petition before the Secretary of Agriculture was filed under § 608c(15) (A), praying for a modification or exemption from Order No. 53. The petition was dismissed by the Secretary. Thereafter, an action was brought in the District Court of the United States for the Southern District of California under § 608c(15) (B), which action was pending at the time of the district court's decree in the instant case. On August 4, 1943, the court in the action under subdivision (B) ordered that the proceedings on review be remanded to the Secretary of Agriculture with certain directions, and the matter has not yet been terminated.

At the trial of the instant cases appellants made offers of proof on the issues raised by the answers, but the court refused to admit any of the offered evidence on the ground that the Act in § 608c(15) provides for a complete and exclusive administrative remedy, including judicial review of the administrative ruling, by which the lawfulness of the order must be determined. Therefore, the findings were limited to the facts of the order and the noncompliance therewith, and injunctions restraining violations of Order No. 53 were issued.

The principal question involved herein is whether in enforcement proceedings under § 608a(6) of the Act handlers are precluded from introducing evidence to controvert the constitutionality of orders made pursuant to the Act, insofar as the applicability of such orders to the handlers are concerned, because of the administrative and judicial review provided for in § 608c(15).

Appellants do not contest the constitutionality of the Act or the validity of Order No. 53 on its face. They do question the validity of Order No. 53 in its application to them and contend that unless they may raise the point as part of their defense to the instant action for enforcement, they will be caused irreparable injury and therefore will be deprived of property without due process of law contrary to the terms of the fifth amendment.

■ The principle that administrative remedies must be exhausted before one may resort to equity is well established. In the instant case the statutory procedure of § 608c(15) including judicial review had not yet been terminated when the instant action for enforcement was brought; it is still pending. Therefore, we are concerned only with the situation where defendants in an action to enforce an order under the Act have diligently pursued their administrative remedy but have not yet received a final decision in that proceeding. Are they, then, entitled to defend the instant enforcement action on the basis of invalidity of the Secretary's order in its application to them?

■ By its terms the Act gives supremacy to the method outlined in § 608c (15) of testing the validity of orders. Proceedings under § 608a(6) are to abate upon the rendering of a final decree in proceedings brought pursuant to § 608c(15), giving only a temporary effect to the decree of enforcement under the former section. Relief under the enforcement section is not to be deterred in any way by the pendency of proceedings under § 608c(15). In addition fines for violations of an order are suspended by § 608c(14) from the time a petition for modification is filed with the Secretary of Agriculture until the defendant receives notice of the Secretary's ruling. All these provisions are consistent only with a construction that the method outlined in the Act for determining the validity of orders is exclusive.

■ Appellants claim a denial of due process on the ground that the Act makes no provision for a supersedeas or stay of an order pending final decision in review proceedings. They rely strongly on Porter v. Investors' Syndicate, 286 U.S. 461, 470, 471, 52 S.Ct. 617, 621, 76 L.Ed. 1226, wherein the court comments that even though a decision of an administrative board is given finality by a state statute, there is no deprivation of due process if the complaining party may have a stay pending such final determination, but that if the statute or court decisions "preclude a supersedeas or stay until the legislative process is completed by the final action of the reviewing court, due process is not afforded, and in cases where the other requisites of federal jurisdiction exist recourse to a federal court of equity is justified."

The facts of the instant case do not fit the language quoted from the Porter case, supra. The Act involved herein nowhere prohibits relief from the operation of an

order of the Secretary. There is nothing in the Act in any way inconsistent with a stay of such an order. There is no indication that a complaining party could not secure a stay from the Secretary while the petition for modification was before him, or from the district court while review proceedings were before it. Appellants made no application for such a stay. Their failure to do so cannot be used to support their argument that due process has been denied them, particularly since they have not shown inadequacy with respect to the available administrative relief. Yakus v. United States, 64 S.Ct. 660; Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 310, 58 S.Ct. 199, 82 L.Ed. 276.

Against an argument of invalidity under the fifth amendment, the United States Supreme Court in Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339, has upheld the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., with its provisions for a protest before the Price Administrator of orders effectuating the terms of the act and for a subsequent complaint before an Emergency Court of Appeals. The Price Control Act specifically declares that the Emergency Court of Appeals and the Supreme Court should have exclusive jurisdiction to consider the validity of such orders and to restrain their enforcement. The suit was brought to restrain the prosecution of criminal actions against appellants for certain violations under the act. The Supreme Court concluded, 319 U.S. at page 188, 63 S.Ct. at page 1022, 87 L.Ed. 1339: "In the light of the explicit language of the Constitution and our decisions, it is plain that Congress has power to provide that the equity jurisdiction to restrain enforcement of the Act, or of regulations promulgated under it, be restricted to the Emergency Court, and, upon review of its decisions, to this Court. Nor can we doubt the authority of Congress to require that a plaintiff seeking such equitable relief resort to the Emergency Court only after pursuing the prescribed administrative procedure."

The Supreme Court of California considered a suit to enjoin the enforcement of an order under the Agricultural Marketing Agreement Act in United States v. Superior Court, 19 Cal.2d 189, 120 P.2d 26. The court adhered to the rule that an administrative remedy provided by statute must be invoked before resort is had to equity. (The court recognized the practice of granting immediate injunctive relief upon proof of the inadequacy of the administrative remedy because of threatened irremediable injury but found no showing of such injury in the allegations of the complaint.)

The reasons underlying the administrative remedy rule are evident from two doctrines recently approved by the United States Supreme Court, in discussing an order of the Interstate Commerce Commission, Rochester Telephone Corp. v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 761, 83 L.Ed. 1147: "One is the primary jurisdiction doctrine * * *. Thereby matters which call for technical knowledge pertaining to transportation must first be passed upon by the Interstate Commerce Commission before a court can be invoked. The other is the doctrine of administrative finality. Even when resort to courts can be had to review a Commission's order, the range of issues open to review is narrow. Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised." Both doctrines are equally applicable to an order promulgated under the terms of the Agricultural Marketing Agreement Act.

■ A study of relevant decisions leaves no doubt that an equity court has no jurisdiction to examine the validity of an administrative order where the administrative remedy has not been invoked or has not been completed and where the one harmed by the administrative order is the moving party in the equity action. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; United States v. Superior Court, 19 Cal.2d 189, 120 P.2d 26. The Myers case held that, in spite of a contention that interstate commerce was not affected, a federal district court had no power to enjoin the National Labor Relations Board from proceeding in a certain situation. To substitute the district court for the tribunal designated as the forum for hearings under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., it was held, would violate the settled rule decreeing exhaustion of the administrative remedy. The case reveals the fallacy in appellants' assertion that the procedure under the National Labor Relations Act supports their position; their theory is that in labor cases the constitutionality of the statute may be raised as a defense to the

Board's petition for enforcement, citing National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. In the Jones & Laughlin case the hearing by the National Labor Relations Board as outlined by the act had already been concluded, and the statutory method for taking the matter into court was being pursued. That the court could not accept jurisdiction sooner is shown by the Myers case, supra.

The question then arises whether the administrative remedy rule applies where the one harmed by the administrative order is the defending party in the equity action. The doctrines of primary jurisdiction and of administrative finality are equally persuasive where the issue is raised by defending parties as where it is raised by moving parties. A consideration of the defense in an enforcement action would nullify the uniformity achieved by devising a single procedure for testing orders promulgated in accordance with the terms of the Act. (Again we note that we are not discussing invalidity apparent on the face of such orders.)

Courts before have refused to hear defendants on points susceptible of correction by administrative procedures. In Bradley v. Richmond, 227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603, a defendant, convicted of conducting business without a license, was not permitted to complain of his discriminatory classification under the licensing act because he had failed to pursue his administrative remedy, there being no want of due process in the scheme of the act. Very recently the Supreme Court refused to consider constitutionality as a defense in a criminal case under the Emergency Price Control Act of 1942 where the defendant had not attempted to question a price regulation through the channels and during the time provided in the act, Yakus v. United States, 64 S.Ct. 660. The court found no lack of due process of law although the Emergency Price Control Act requires the enforcement of regulations made under it until the final disposition of a case on judicial review, that is, until the completion of the statutory procedure for review.

With respect to orders concerning rents under the Emergency Price Control Act the Supreme Court commented in Bowles v. Willingham, 64 S.Ct. 641, 650: "Here Congress has provided for judicial review of the Administrator's action. To be sure, that review comes after the order has been promulgated; and no provision for a stay is made. But as we have held in Yakus v. United States, supra, that review satisfies the requirements of due process. As stated by Mr. Justice Brandeis for a unanimous Court in Phillips v. Commissioner, 283 U.S. 589, 596, 597, 51 S.Ct. 608, 611, 75 L.Ed. 1289. 'Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. [Citing cases.] Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied.'"

There is no question but that the Agricultural Marketing Agreement Act satisfies the requirements of due process and provides for an adequate judicial determination of property rights. Even before the issuance of an order by the Secretary of Agriculture, he must give notice of and an opportunity to be heard on a proposed order, § 608c(3) and (4). After issuance of an order a petition to the Secretary for modification and exemption and a hearing thereon, and subsequently full judicial review in a federal district court, is sanctioned, § 608c(15).

We conclude that the district court herein properly refused to receive evidence offered to establish the invalidity of Order No. 53 as it applied to appellants.

Affirmed.